UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

JENNY RUBIN, DEBORAH RUBIN, STUART E.
HERSH, RENAY FRYM, NOAM ROZENMAN,
ELENA ROZENMAN and TZVI ROZENMAN,

             Plaintiffs/Judgment Creditors,

                         -against-

ALAVI FOUNDATION, on behalf of 650 Fifth
Avenue Company,
ASSA CORPORATION and
ASSA COMPANY LIMITED,

             Defendants/Garnishees.

----------------------------------------------------------------------X

Civil Action No. 09 CIV 00165

**COMPLAINT**

       Plaintiffs/Judgment Creditors, by their attorneys, Jaroslawicz & Jaros,

complaining of the Defendants/Garnishees, allege for their Complaint as follows:

## NATURE OF PROCEEDING AND RELIEF REQUESTED

       1.     Plaintiffs/Judgment Creditors ("plaintiffs") hold unsatisfied

judgments in the total amount of $47.5 million against the Islamic Republic of Iran

("Iran"). Those judgments arise from a terrorist suicide bombing carried out by agents of

Iran on September 4, 1997, in which plaintiffs were severely harmed.

       2.     Pursuant to § 201 of the Terrorism Risk Insurance Act of 2002

("TRIA"), plaintiffs are entitled to enforce their judgment against the blocked assets of

agencies and instrumentalities of Iran.

3.     In October 2007, all assets of Bank Melli Iran ("Bank Melli"), an agency and instrumentality of Iran, were blocked by the United States Treasury, thereby rendering them subject to attachment, execution and turnover by the plaintiffs pursuant to § 201 of TRIA.

4.     Bank Melli owns a 40% interest in a partnership known as 650 Fifth Avenue Company ("Fifth Avenue Company), which owns a building located at 650 Fifth Avenue in New York.

5.     The remaining 60% interest in Fifth Avenue Company is owned by defendant/garnishee Alavi Foundation, a domestic not-for-profit corporation incorporated in New York.

6.     Bank Melli's interest in Fifth Avenue Company is nominally titled to defendant/garnishee Assa Corporation ("Assa Corp."), which is a New York domestic business corporation incorporated in 1989.

7.     All shares in Assa Corp. are nominally titled to defendant/garnishee Assa Company Limited ("Assa Co. Ltd."), a corporation domiciled in Jersey, Channel Islands, United Kingdom.

8.     The U.S. Departments of Justice and the Treasury, and the Federal Bureau of Investigation, have determined that Assa Corp. and Assa Co. Ltd. are merely front corporations established and controlled by Bank Melli, and that the 40% interest in Fifth Avenue Company nominally titled to Assa Corp. is in fact owned by Bank Melli.

9.     The U.S. Government has also determined that Assa Corp. regularly transfers to Bank Melli rental income from the 650 Fifth Avenue building.

10.     Plaintiffs therefore bring this action pursuant to Fed.R.Civ.P. 69, CPLR §§ 5225-5227 and § 201 of TRIA, for an order and judgment conveying, assigning and directing the turnover to plaintiffs in satisfaction of their judgment of:

a)      All right, title, and interest of Bank Melli in Fifth Avenue Company;

b)      All debts owed by Assa Corp. and Assa Co. Ltd. to Bank Melli; and

c)      All right, title, and interest of Bank Melli in Assa Corp..

## JURISDICTION

11.     This Court has subject-matter jurisdiction in this action pursuant to 28 U.S.C. §§ 1331, pursuant to § 201 of the Terrorism Risk Insurance Act, and pursuant to its inherent ancillary enforcement jurisdiction, since this is an action to enforce a federal judgment.

12.     This Court has jurisdiction over the defendants/garnishees pursuant to Fed.R.Civ.P. 4(k).

## THE PARTIES

13.     Plaintiffs are United States citizens currently residing in Israel.

14.     Plaintiffs hold unsatisfied judgments against Iran in the amount of $47.5 million plus post-judgment interest.

15.     Defendant Alavi Foundation is a domestic not-for-profit corporation incorporated, domiciled and headquartered in New York, with offices at 500 Fifth Avenue, New York, New York. Defendant Alavi Foundation is named as a garnishee in this action on behalf of 650 Fifth Avenue Company pursuant to CPLR § 5201(c)(3), which provides that where a judgment is enforced against an interest in a partnership, "any partner other than the judgment debtor, on behalf of the partnership, shall be the garnishee."

16.     Defendant Assa Corporation ("Assa Corp."), is a domestic business corporation incorporated, domiciled and headquartered in New York.

17.     Defendant Assa Company Limited ("Assa Co. Ltd.") is a corporation domiciled and headquartered in Jersey, Channel Islands, United Kingdom.

18.     Defendants Alavi Foundation, Assa Corp. and Assa Co. Ltd. do continuous, on-going and extensive business in New York State.

## STATEMENT OF FACTS

### A.     Plaintiffs' Judgment

19.     Plaintiffs are American citizens who were severely harmed by a triple suicide bombing carried out by the terrorist group Hamas on September 4, 1997, at an outdoor pedestrian mall in Jerusalem, Israel.

20.     Plaintiffs brought suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(7), in the United States District Court for the District of Columbia against Iran and various Iranian government defendants for their provision of training and other material support and assistance to the Hamas terrorists who carried out the bombing attack. (*Rubin, et al. v. Islamic Rep. of Iran, et al.,* 01-1655 (D.D.C.)).

21.     Section 1605(a)(7) of the FSIA creates subject-matter jurisdiction and abrogates the sovereign immunity of designated foreign state sponsors of terrorism (such as Iran) in civil actions for money damages "for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources...for such an act...." 28 U.S.C. § 1605(a)(7).

22.     Following a four-day evidentiary hearing conducted pursuant to 28 U.S.C. § 1608, the U.S. District Court for the District of Columbia court found "clear and

convincing evidence" that Iran and the other defendants provided terrorist training and other material assistance to the Hamas terrorists who executed the bombing attack, and held Iran and the other defendants liable for the torts of battery, assault, and intentional infliction of emotional distress against the plaintiffs. *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003).

23.    On September 10, 2003, the trial court entered judgments in favor of the plaintiffs against Iran and the other defendants, jointly and severally, in the total amount of $47.5 million in compensatory damages ("judgments"). Iran has refused to honor the judgments.

24.    Plaintiffs' judgments have been registered in this Court pursuant to 28 U.S.C. § 1963 under case number 18 MS 302 (judgment no. 03-2371) and therefore have "the same effect as a judgment of" this Court "and may be enforced in like manner." 28 U.S.C. § 1963.

**B.    Plaintiffs' Writ of Execution**

25.    On October 10, 2008, pursuant to CPLR § 5230 (made applicable here by Fed.R.Civ.P. 69), plaintiffs served a Writ of Execution issued by this Court on the United States Marshal for the Southern District of New York.

26.    By serving the Writ of Execution on the U.S. Marshal, the plaintiffs obtained a priority lien on all personal property in New York County subject to execution and attachment in satisfaction of their judgment. *See* David D. Siegel, Practice Commentaries, CPLR § 5230:1, ("[W]ith the simple act of delivering an execution to the sheriff, the creditor secures a lien on the debtor's personal property in the county even though neither the creditor nor the sheriff know of any. *See* CPLR 5234(b).").

**C.     Plaintiffs Are Entitled to Enforce Their Judgment**
        **Against the Assets of Bank Melli**

   27. Section 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA")

provides in relevant part that:

> Notwithstanding any other provision of law … in
> every case in which a person has obtained a judgment
> against a terrorist party on a claim based upon an act
> of terrorism, or for which a terrorist party is not
> immune under section 1605(a)(7) of title 28, United
> States Code, the blocked assets of that terrorist party
> (including the blocked assets of any agency or
> instrumentality of that terrorist party) shall be subject
> to execution or attachment in aid of execution in order
> to satisfy such judgment to the extent of any
> compensatory damages for which such terrorist party
> has been adjudged liable.

Terrorism Risk Insurance Act of 2002, Pub.L. No. 107-297, 116 Stat. 2322 (2002), § 201(a).

   28. The plaintiffs obtained their judgment against Iran on a claim for

which Iran was not immune under 28 U.S.C. § 1605(a)(7). *See Campuzano v. Islamic*

*Republic of Iran*, 281 F. Supp. 2d 258, 269-270 (D.D.C. 2003). *See also Rubin v. The Islamic*

*Republic of Iran*, 456 F.Supp.2d 228, 235 (D.Mass. 2006) ("In this case, the plaintiffs

obtained their judgment on a claim for which Iran was not immune under 28 U.S.C. §

1605(a)(7)").

   29. Iran is a foreign state designated as a state sponsor of terrorism

under the Export Administration Act of 1979, and the plaintiffs' judgment was therefore

entered against a "terrorist party" as defined in Section 201(d)(4) of TRIA. *See Rubin*, 456

F.Supp.2d at 235 ("Iran has been designated as a state sponsor of terrorism, and is therefore a "terrorist party" as defined in § 201(d)(4) of the TRIA.") (citations omitted).[1]

30.     Thus, pursuant to § 201 of TRIA, "the blocked assets of" Iran, "including the blocked assets of any agency or instrumentality of" Iran, are "subject to execution or attachment in aid of execution in order to satisfy" the compensatory damages component of the plaintiffs' judgment against Iran. As Judge Marrero of this Court explained in a recent decision:

> TRIA ... explicitly provides that where a judgment against a terrorist party exists, <u>not only its blocked assets, but the assets of its agencies and instrumentalities can be used to satisfy the judgment</u>. The language of TRIA itself thus indicates that <u>Congress intended to make the agencies or instrumentalities of statutorily defined terrorist parties liable for qualifying judgments rendered against the terrorist party in question</u>."

*Weininger v. Castro*, 462 F.Supp.2d 457, 485 (S.D.N.Y. 2006) (emphasis added).

31.     Thus, plaintiffs are entitled to enforce their judgment against Bank Melli's assets, provided only that: (a) Bank Melli is an "agency or instrumentality" of Iran; and (b) the assets are "blocked" within the meaning of TRIA.

32.     The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611, defines an agency or instrumentality of a foreign state to mean any entity-

> (1)   which is a separate legal person, corporate or otherwise, and

---

[1] Section 201(d)(4) of TRIA defines a "terrorist party" as including "a foreign state designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j))."

> (2) which is an organ of a foreign state or
>     political subdivision thereof, or a majority of
>     whose shares or other ownership interest is
>     owned by a foreign state or political
>     subdivision thereof, and
> (3) which is neither a citizen of a State of the
>     United States as defined in section 1332(c)
>     and (e) of this title, nor created under the
>     laws of any third country.

28 U.S.C. § 1603(b).

33.     Bank Melli is incorporated in Iran and is wholly owned by the Iranian government, and is therefore an agency and instrumentality of Iran. *See e.g. Itek Corp. v. First Nat. Bank of Boston*, 730 F.2d 19, 25 and 20 (1st Cir. 1984) (noting that Bank Melli is owned by Iran and holding that Bank Melli is "an instrumentality of the Iranian government"); *Wyle v. Bank Melli of Tehran*, Iran, 577 F.Supp. 1148 (D.C.Cal. 1983) ("It is...undisputed that defendants Bank Melli and PSO are 'agenc[ies] or instrumentalit[ies] of a foreign state' as defined by 28 U.S.C. § 1603(b).").

34.     Therefore, pursuant to § 201 of TRIA, the plaintiffs are entitled to enforce their judgment against the "blocked assets" of Bank Melli.

35.     All of Bank Melli's assets in the United States are "blocked assets" within the meaning of § 201 of TRIA.

36.     Section 201(d)(2) of TRIA defines the term "blocked assets" as "any asset seized or frozen by the United States" pursuant to the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq.*) ("IEEPA").

37.     On October 25, 2007, the Treasury Department designated Bank Melli as a proliferator of weapons of mass destruction under Executive Order 13382, and blocked all property of Bank Melli within the jurisdiction of the United States.

38.    Executive Order 13382 was issued by the President on June 28, 2005, pursuant to the authority granted to him under IEEPA. Executive Order 13382, 70 Fed. Reg. 38567 (June 28, 2005).

39.    Executive Order 13382 provides that "all property and interests in property" of entities listed in the order or subsequently designated by the Treasury Department "that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of United States persons, are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in". *Id.* (emphasis added).

40.    The Treasury Department explained upon designating Bank Melli under Executive Order 13382 that:

> As a result of our actions today, all transactions involving any of the designees and any U.S. person will be prohibited and any assets the designees may have under U.S. jurisdiction will be frozen.

41.    Thus, the October 25, 2007 designation of Bank Melli froze all its assets in the United States, pursuant to the blocking directive issued by the President (Executive Order 13382) in exercise of his powers under IEEPA.

42.    Therefore, all assets of Bank Melli in the United States are "blocked assets" within the meaning of TRIA, and plaintiffs are thus entitled to enforce their judgment against all assets of Bank Melli in the United States.

**D.     Bank Melli's Assets in New York**

43.     Bank Melli owns a 40% interest in a New York partnership known as 650 Fifth Avenue Company ("Fifth Avenue Company), which owns a building located at 650 Fifth Avenue in New York. The remaining 60% interest in Fifth Avenue Company is owned by the Alavi Foundation.

44.     Bank Melli's interest in Fifth Avenue Company is nominally titled to Assa Corp., and all shares in Assa Corp. are nominally titled to Assa Co. Ltd..

45.     Assa Corp. and Assa Co. Ltd. are merely straw corporations set up, owned and controlled by Bank Melli.

46.     Assa Corp. and Assa Co. Ltd. were established by Bank Melli for the purpose of enabling Bank Melli to unlawfully hold a 40% partnership interest in Fifth Avenue Company, and receive rental income from the building owned by Fifth Avenue Company.

47.     Accordingly, the 40% partnership interest in Fifth Avenue Company nominally titled to Assa Corp. and Assa Corp. itself constitute blocked assets of Bank Melli subject to execution by the plaintiffs under TRIA § 201.

48.     Likewise, and all rental income held and/or received by Assa Corp. constitutes a blocked asset of Bank Melli subject to execution by the plaintiffs under TRIA § 201.

49.     The allegations contained in the preceding paragraphs are fully documented by the U.S. government in a verified civil forfeiture complaint filed on December 17, 2008, in the matter of *U.S. v. All Right, Title and Interest of Assa Corporation,*

*et al.,* Civ. No. 08-10934 (S.D.N.Y.) (Exhibit A) and in a formal statement of designation issued by the Treasury Department on the same date (Exhibit B).

50.   The facts, findings and determinations contained in the Government's verified forfeiture complaint (Exhibit A) and statement of designation (Exhibit B) are incorporated herein by reference as if fully set forth herein.

51.   In a Post-Complaint Protective Order intended to prevent the dissipation of the Bank Melli assets which the Government seeks to forfeit, which was prepared and submitted by the Government and endorsed by Judge Holwell of this Court on December 17, 2008, the Government itself went out of its way to expressly state that:

> Nothing in this Protective Order shall be construed as affecting in any way the rights of any part[y] under Section 201 of the Terrorism Risk Insurance Act of 2002.

Exhibit C at ¶ 13.

52.   It is clear, therefore, that the U.S. Government recognizes that the assets its seeks to forfeit (including the 40% partnership interest in Fifth Avenue Company nominally titled to Assa Corp.) constitute blocked assets of Bank Melli subject to execution by the plaintiffs under TRIA § 201.

### FIRST CLAIM FOR RELIEF
### AGAINST DEFENDANT ALAVI FOUNDATION ON BEHALF
### OF 650 FIFTH AVENUE COMPANY
### TURNOVER PURSUANT TO CPLR §§ 5225 & 5227

53.   Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if they were more fully set forth herein.

54.     Plaintiffs are judgment-creditors of Iran.

55.     Plaintiffs are entitled to enforce their judgment against all assets of Bank Melli in the United States.

56.     Bank Melli provided the funding for the building owned by the 650 Fifth Avenue Company.

57.     Assa Corp. holds a 40% interest in the 650 Fifth Avenue Company.

58.     Bank Melli created Assa Corp. merely as a trust vehicle to hold the 40% interest in the 650 Fifth Avenue Company on behalf of Bank Melli.

59.     Assa Corp. does not own, and does not purport to own the 40% interest in the 650 Fifth Avenue Company.

60.     Assa Corp. considers itself merely a trustee of the 40% interest in the 650 Fifth Avenue Company on behalf and for the benefit of Bank Melli.

61.     Assa Corp. holds the 40% interest in the 650 Fifth Avenue Company as a trust, a constructive trust and/or a resulting trust on behalf of and for the benefit of Bank Melli.

62.     Bank Melli is the sole legal and beneficial owner of the 40% interest in the 650 Fifth Avenue Company nominally titled to Assa Corp..

63.     The Alavi Foundation is a partner in 650 Fifth Avenue Company and is therefore a proper garnishee in this action pursuant to CPLR § 5201(c)(3).

64.     Plaintiffs are therefore entitled to an order and judgment pursuant to CPLR §§ 5225 and 5227, conveying, assigning and directing the turnover to the plaintiffs in satisfaction of their judgment of all right, title and interest nominally titled to Assa Corp., and legally and beneficially owned by Bank Melli, in 650 Fifth Avenue Company.

## SECOND CLAIM FOR RELIEF
## AGAINST DEFENDANTS ASSA CORP. AND ASSA CO. LTD.
## TURNOVER PURSUANT TO CPLR § 5227

65.     Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if they were more fully set forth herein.

66.     Plaintiffs are judgment-creditors of Iran.

67.     Plaintiffs are entitled to enforce their judgment against all assets of Bank Melli in the United States.

68.     Bank Melli created Assa Corp. and Assa Co. Ltd. merely as trust vehicles to hold the 40% interest in the 650 Fifth Avenue Company and derive rental income therefrom on behalf of Bank Melli.

69.     Assa Corp. and Assa Co. Ltd. do not own, and do not purport to own, the rental proceeds derived from 650 Fifth Avenue Company.

70.     Assa Corp. and Assa Co. Ltd. consider themselves merely trustees of the rental proceeds derived from 650 Fifth Avenue Company, on behalf and for the benefit of Bank Melli.

71.     Assa Corp. and Assa Co. Ltd. receive and hold rental proceeds from 650 Fifth Avenue Company as a trust, a constructive trust and/or a resulting trust on behalf of and for the benefit of Bank Melli.

72.     Bank Melli is the sole legal and beneficial owner of the rental proceeds from 650 Fifth Avenue Company.

73.     Plaintiffs are therefore entitled to an order and judgment pursuant to CPLR § 5227, conveying, assigning and directing the turnover to the plaintiffs in

satisfaction of their judgment of rental proceeds held and/or received by Assa Corp. and Assa Co. Ltd. derived from 650 Fifth Avenue Company.

**THIRD CLAIM FOR RELIEF**
**AGAINST DEFENDANTS ASSA CORP. AND ASSA CO. LTD.**
**TURNOVER PURSUANT TO CPLR §§ 5225 & 5227**

74.    Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if they were more fully set forth herein.

75.    Plaintiffs are judgment-creditors of Iran.

76.    Plaintiffs are entitled to enforce their judgment against all assets of Bank Melli in the United States.

77.    Bank Melli created Assa Corp. and Assa Co. Ltd. merely as trust vehicles to hold the 40% interest in the 650 Fifth Avenue Company and derive rental income therefrom on behalf of Bank Melli.

78.    Assa Co. Ltd. does not own, and does not purport to own, Assa Corp..

79.    Assa Co. Ltd. considers itself merely the trustees of the shares in Assa Corp., on behalf and for the benefit of Bank Melli.

80.    Assa Co. Ltd. holds the shares of Assa Corp. as a trust, a constructive trust and/or a resulting trust on behalf of and for the benefit of Bank Melli.

81.    Bank Melli is the sole legal and beneficial owner of the shares of Assa Corp..

82.    Plaintiffs are therefore entitled to an order and judgment pursuant to CPLR §§ 5225 and 5227, conveying, assigning and directing the turnover to the plaintiffs in satisfaction of their judgment of all shares of Assa Corp..

**WHEREFORE**, the Plaintiffs demand an order and judgment conveying, assigning and directing the turnover to plaintiffs in satisfaction of their judgment of:

a)   All right, title, and interest of Bank Melli in 650 Fifth Avenue Company, including without limitation all right, title, and interest nominally titled to Assa Corp.;

b)   All debts owed by Assa Corp. and Assa Co. Ltd. to Bank Melli; and

c)   All right, title, and interest of Bank Melli in Assa Corp., including without limitation all right, title, and interest in the shares of Assa Corp. which are nominally titled to Assa Co. Ltd..


Dated:   New York, New York
         January 8, 2009

                              Yours,

                              JAROSLAWICZ & JAROS, LLC
                              *Attorneys for the Plaintiffs*

                              by: _____
                                     Robert Tolchin

                              225 Broadway, 24th floor
                              New York, New York 10007
                              (212) 227-2780

                              David J. Strachman, Esq.
                              MCINTYRE, TATE & LYNCH, LLP
                              *Attorneys for the Plaintiffs*
                              321 South Main Street, Suite 400
                              Providence, RI 02903
                              (401) 351-7700

# EXHIBIT A

08 CIV 10934

LEV L. DASSIN
Acting United States Attorney for the
Southern District of New York
By:  SHARON COHEN LEVIN
     ANNA E. ARREOLA
     HARRY A. CHERNOFF
     ERIC SNYDER
One St. Andrew's Plaza
New York, New York 10007
(212) 637-1060/2218/2481/2534

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                        :

          -v.-                                  :

ALL RIGHT, TITLE, AND INTEREST OF ASSA          :     08 Civ.
CORPORATION, ASSA COMPANY LIMITED, AND BANK
MELLI IRAN IN 650 FIFTH AVENUE COMPANY,         :
INCLUDING BUT NOT LIMITED TO THE REAL
PROPERTY AND APPURTENANCES LOCATED AT 650       :     VERIFIED
FIFTH AVENUE, NEW YORK, NEW YORK, WITH ALL            COMPLAINT
IMPROVEMENTS AND ATTACHMENTS THEREON,           :

ALL FUNDS FORMERLY ON DEPOSIT AT CITIBANK,      :
N.A., NEW YORK, NEW YORK, IN ACCOUNT NUMBER
78429712, IN THE NAME OF ASSA CORPORATION,      :
AND ALL FUNDS TRACEABLE THERETO,
                                                :

ALL FUNDS FORMERLY ON DEPOSIT AT CITIBANK,      :
N.A., NEW YORK, NEW YORK, IN ACCOUNT NUMBER
8881654552, IN THE NAME OF ASSA CORPORATION,    :
AND ALL FUNDS TRACEABLE THERETO,
                                                :

ALL FUNDS FORMERLY ON DEPOSIT AT JPMORGAN       :
CHASE BANK, N.A., BATON ROUGE, LOUISIANA, IN
ACCOUNT NUMBER 2724409590, IN THE NAME OF       :
ASSA CORPORATION, AND ALL FUNDS TRACEABLE
THERETO, AND                                    :

ALL FUNDS FORMERLY ON DEPOSIT AT JPMORGAN       :
CHASE BANK, N.A., BATON ROUGE, LOUISIANA, IN
ACCOUNT NUMBER 725700280, IN THE NAME OF        :
ASSA CORPORATION, AND ALL FUNDS TRACEABLE
THERETO,                                        :

          Defendants in rem.                    :

                                                :
- - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff United States of America, by its attorney, Lev L. Dassin, Acting United States Attorney for the Southern District of New York, for its verified complaint alleges, upon information and belief, as follows:

## I. NATURE OF THE ACTION

1.   This is an action by the United States of America seeking forfeiture of the properties described below:

   a.   All right, title, and interest of Assa Corporation, Assa Company Limited, and Bank Melli Iran in 650 Fifth Avenue Company, including but not limited to the real property and appurtenances located at 650 Fifth Avenue, New York, New York, with all improvements and attachments thereon, and all property traceable thereto (the "Defendant Real Property");

   b.   All funds formerly on deposit in Account Number 78429712, at Citibank, N.A., New York, New York ("Defendant Account-1");

   c.   All funds formerly on deposit in Account Number 8881654552, at Citibank, N.A., New York, New York ("Defendant Account-2");

   d.   All funds formerly on deposit in Account Number 2724409590, at JPMorgan Chase Bank, N.A., Baton Rouge, Louisiana ("Defendant Account-3");

   e.   All funds formerly on deposit in Account Number 725700280, at JPMorgan Chase Bank, N.A., Baton Rouge, Louisiana ("Defendant Account-4").

(collectively, the "Defendant Properties").

2.   The Defendant Properties are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to violations of the International Emergency Economic Powers Act ("IEEPA"), codified at 50 U.S.C. § 1701 *et seq.* In addition, the Defendant Properties are subject to seizure and forfeiture pursuant to 18 U.S.C.

§ 981(a)(1)(A), as property involved in money laundering transactions and attempted money laundering transactions, in violation of 18 U.S.C. §§ 1956 and 1957, and as property traceable to such property.

## II. JURISDICTION AND VENUE

3.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

4.    Venue is proper pursuant to 28 U.S.C. § 1395(b) because the Defendant Properties are located in the Southern District of New York and pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the Southern District of New York.  The Defendant Accounts are currently in the custody of the United States Marshals Service for the Southern District of New York.

## III. PROBABLE CAUSE FOR FORFEITURE

### The International Emergency Economic Powers Act ("IEEPA") and the Iranian Transaction Regulations

5.    This civil forfeiture action relates to violations of regulations issued pursuant to IEEPA, codified at 50 U.S.C. § 1701 *et seq.*  This law, which was enacted in 1977, authorizes the President of the United States to regulate financial transactions with foreign countries and foreign nationals in order to deal with threats with respect to which a national emergency has been declared, and prescribes criminal penalties for violations of the statute and the regulations promulgated thereto.

6.    Using the powers conferred by IEEPA, the President

-3-

and the Executive Branch declared a national emergency and issued orders and regulations prohibiting certain transactions with Iran and the Government of Iran by United States persons or involving the export of goods or services from the United States.  Section 1705 of Title 50, United States Code, provides, in part, that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this title."  50 U.S.C. § 1705(a).

   7. In 1995, in order to implement a series of executive orders issued pursuant to IEEPA, the Department of Treasury promulgated the Iranian Transaction Regulations ("ITRs"), Title 31, United States Code of Federal Regulations, Part 560.  The relevant provisions of the ITRs generally prohibit (1) the exportation, sale or supply, directly or indirectly, by a United States person or from the United States, of any goods, technology, or services to Iran or the Government of Iran, and (2) the engagement by United States persons in any transaction or dealing, in or related to goods, technology or services, for exportation to Iran or the Government of Iran, without having first obtained a valid license from the United States Department of Treasury, Office of Foreign Assets Control ("OFAC").

   8. The ITRs impose the following prohibitions, among others:

> 31 C.F.R. § 560.204 - Prohibited exportation,
> reexportation, sale or supply of goods, technology, or
> services to Iran.
>
> Except as otherwise authorized pursuant to this part,

including § 560.511, and notwithstanding any contract
entered into or any license or permit granted prior to
May 7, 1995, the exportation . . . sale, or supply,
directly or indirectly, from the United States, or by a
United States person, wherever located, of any goods,
technology, or services to Iran or the Government of
Iran is prohibited, including the exportation . . .
sale, or supply of any goods, technology, or services
to a person in a third country undertaken with
knowledge or reason to know that:

(a) Such goods, technology, or services are intended
specifically for supply . . . directly or indirectly,
to Iran or the Government of Iran . . . .

31 C.F.R. § 560.203 - Evasions; attempts.

Any transaction by any United States person or within
the United States that evades or avoids, or has the
purpose of evading or avoiding, or attempts to violate,
any of the prohibitions contained in this part is
hereby prohibited.

9.    Courts have recognized that the term "services,"
as used in the ITRs, includes the performance of something useful
for a fee, such as conducting money transfers from the United
States to Iran on behalf of others.

10.    Pursuant to 31 C.F.R. § 560.304, the term
"Government of Iran" includes: "(a) The state and the Government
of Iran . . . (b) [a]ny entity owned or controlled directly or
indirectly by the foregoing; (c) [a]ny person to the extent that
such person is, or has been, or to the extent that there is
reasonable cause to believe that such person is, or has been,
since the applicable effective date, acting or purporting to act
directly or indirectly on behalf of any of the foregoing; and (d)
[a]ny person or entity designated by the Secretary of the
Treasury as included within paragraphs (a) through (c) of this
section."

11.   The term "entity owned or controlled by the
Government of Iran" is defined at 31 C.F.R. § 560.313, and
"includes any corporation, partnership, association, or other
entity in which the Government of Iran owns a majority or
controlling interest, and any entity which is otherwise
controlled by that government."

12.   Bank Melli Iran ("Bank Melli") is wholly owned and
controlled by the Government of Iran.  In addition, in 1999, OFAC
identified Bank Melli in Iran, and all of its offices worldwide,
as entities "owned or controlled by the Government of Iran."  31
C.F.R. Part 560, App. A.

13.   The ITRs further impose the following
prohibitions:

> 31 C.F.R. § 560.206 - Prohibited trade-related
> transactions with Iran; goods, technology, or services.
>
> (a) Except as otherwise authorized pursuant to this
> part, and notwithstanding any contract entered into or
> any license or permit granted prior to May 7, 1995, no
> United States person, wherever located, may engage in
> any transaction or dealing in or related to . . .
>
> (2) Goods, technology, or services for exportation,
> reexportation, sale or supply, directly or indirectly,
> to Iran or the Government of Iran.
>
> (b) For purposes of paragraph (a) of this section, the
> term transaction or dealing includes but is not limited
> to purchasing, selling, transporting, swapping,
> brokering, approving, financing, facilitating, or
> guaranteeing.

14.   Pursuant to 31 C.F.R. § 560.314, the term "United
States person" means "any United States citizen, permanent
resident alien, entity organized under the laws of the United
States (including foreign branches), or any person in the United

States."

**Overview**

15.   This civil forfeiture action concerns the
ownership of a 36-story office building located at 650 Fifth
Avenue, New York, New York (the "Building").

16.   As explained below, the Building is owned by 650
Fifth Avenue Company (the "Fifth Avenue Company), which is a
partnership between the Alavi Foundation of New York and Bank
Melli.  Bank Melli owns 40% of the Fifth Avenue Company through
two shell companies, Assa Corporation ("Assa Corp."), which is a
a New York corporate entity, and Assa Company Limited ("Assa Co.
Ltd."), which is a corporation domiciled in Jersey, Channel
Islands, United Kingdom.  Assa Corp. is wholly owned by Assa Co.
Ltd.

17.   As set forth below, Assa Corp. has been providing
numerous services to Bank Melli in contravention of the ITRs,
including transferring rental income generated from the Fifth
Avenue Company to Bank Melli, following Bank Melli's instructions
with regard Assa Corp.'s affairs, reporting back to Bank Melli on
Assa Corp.'s financial situation and business dealings, and
managing the affairs of Assa Corp. for the benefit of Bank Melli.

**The Formation of 650 Fifth Avenue Company and
Bank Melli's Straw Companies, Assa Corp. and Assa Co. Ltd.**

18.   The Building was constructed in the 1970's by the
Pahlavi Foundation, a non-profit organization operated by the
Shah of Iran to pursue Iran's charitable interests in the United
States.   In the 1970's, Bank Melli loaned the Pahlavi Foundation

-7-

approximately $42 million to be used for the construction and acquisition of the Building.

19. Following the Iranian revolution of 1979, the Pahlavi Foundation was renamed the Mostazafan Foundation of New York (the "Mostazafan Foundation"), and later renamed the Alavi Foundation of New York (the "Alavi Foundation"). The Alavi Foundation is presently a not-for-profit corporation organized under the laws of New York. A substantial portion of the Alavi Foundation's funds come from the significant rent roll of the Building.

20. In 1989, the Mostazafan Foundation entered into a partnership with Bank Melli in order to avoid paying taxes on rental income from the Building. Under the debt-financed property rules of the federal tax code, the Foundation's rental income was unrelated business income and therefore subject to tax.

21. In order to remove the debt and avoid paying taxes on income from the Building, the Mostazafan Foundation formed the 650 Fifth Avenue Company (the "Fifth Avenue Company"), a partnership with Bank Melli. However, Bank Melli disguised its ownership interest by establishing two shell companies, Assa Corp. and Assa Co. Ltd. Mohammad Behdadfar ("Behdadfar"), a Bank Melli board member, was appointed the President of Assa Corp., and a director of Assa Co. Ltd.

22. The Mostazafan Foundation and Assa Corp. entered into a written Partnership Agreement on or about July 31, 1989. The Partnership Agreement provided, in part, that the partnership

-8-

would be called 650 Fifth Avenue Company, that the Foundation would contribute the Building to the Partnership, and that Assa Corp. would contribute $44.8 million to the capital of the partnership. As a result of this partnership, the debt on the Building was removed, permitting the Alavi Foundation to avoid paying U.S. taxes on revenue from the Building.

23.   Today, the two straw owners of Assa Co. Ltd. are Davood Shakeri ("Shakeri") and Fatemeh Aghamiri ("Aghamiri"), who are residents of Iran and represent the interests of Bank Melli. Financial statements for Assa Co. Ltd. state that Shakeri and Aghamiri each own 50% share capital of the company.

24.   Since at least 1990, Assa Corp. has repeatedly transferred rental income from the Fifth Avenue Company to Bank Melli through Assa Co. Ltd. Assa Corp. has also regularly followed Bank Melli's instructions with regard to Assa Corp.'s business affairs and its management of the investment, and has regularly reported back to Bank Melli on its financial situation.

25.   Assa Corp. and Assa  Co. Ltd. have never received a license from OFAC. Bank Melli has never received a license from OFAC relating to the Building.

### Tafti's Employment by Assa Corp.

26.   In the United States, Assa Corp. has a single employee working for it, Mohammad Hassan Dehghani Tafti ("Tafti"). Tafti is a naturalized Iranian citizen, born in India.

27.   Tafti first came to the United States in or about 1999 with an L-1 visa, which was issued on the basis of a

petition made on his behalf by his employer, Assa Corp.  An L-1
visa is a visa issued to managers or executives of companies
doing business in the United States.  Assa Corp. submitted a
petition in or about May 1999 in support of Tafti's application
for the L-1 visa.  The petition described Tafti's "proposed
duties in the U.S." as "Treasurer, oversee financial operations
and investments."  The L-1 visa was initially granted to Tafti in
or about July 1999 for three months, and was subsequently renewed
upon further applications in or about September 2000, March 2001,
August 2001, and December 2001.

      28.  In or about November 2002, Tafti applied for an H-
1B visa at the United States Embassy in Ankara, Turkey. An H-1B
visa is a visa issued to employees with specialized knowledge.
In the application, Tafti identified his present employer as
"Assa Corp., 500 Fifth Avenue, NY, NY," and his present
occupation as "financial executive."  However, Tafti stated that
he intended to work in the United States at Optima Mortgage
Company in Santa Ana, California.  Shortly after submitting his
application for an H-1B visa, Tafti submitted another
application.  In this subsequent application, Tafti again stated
that he intended to work for Optima Mortgage.  The H1-B visa was
issued in January 2003, after which Tafti again entered the
United States.

      29.  While living in the United States with his H-1B
visa, Tafti in fact continued to work for Assa Corp., pretending
to work for Optima Mortgage Corporation ("Optima Mortgage") only
for immigration purposes.  To create the image that he worked for

-10-

Optima Mortgage, Tafti moved money from Assa Corp. to Optima
Mortgage to cover his payroll from Optima Mortgage.  In order to
do this, Tafti transferred monies from Assa Corp. to his personal
bank account, and from his personal bank account to Optima
Mortgage.  On approximately 23 occasions from in or about May
2003 through in or about September 2005, checks and wire
transfers in the approximate amount of $3,800 each were made from
Tafti's personal bank account to the president of Optima
Mortgage, or his wife, also an employee of Optima Mortgage.
Close in time to each of these checks and wire transfers, Tafti
was paid approximately $2,800 by Optima Mortgage.  These
transactions appeared to be designed to return to Tafti the
$3,800 payments, minus requisite payroll taxes.  Additionally, on
or about July 27, 2006, Assa Corp. paid Optima Mortgage the sum
of $22,500.

        30.  On or about December 31, 2006, Tafti left the
United States for Turkey.  In or about May 2007, Tafti applied
for an H-1B visa at the United States Embassy in Dubai, United
Arab Emirates.  In this application, Tafti stated that he was
employed as a "market analyst manager" for Optima Mortgage in
Tustin, California, but that he would be living in Tuckahoe, New
York.  Initially, no action was taken on the application.  In
February 2008, Tafti reactivated this application and an H-1B
visa was subsequently granted.  In May 2008, Tafti returned to
New York from Dubai.

                Bank Melli's Control of Assa Corp. through Tafti

        31.  Tafti used the email account ██████████████████

to conduct business on behalf of Assa Corp.  Emails sent to and
from this account show that Tafti regularly provided reports to
Bank Melli about Assa Corp.'s business dealings, and then
followed Bank Melli's instructions with regard to Assa Corp.'s
business affairs.  The following emails, which have been
translated from Farsi, were among the emails sent to or from the
account:

      a.   On or about June 12, 2003, Tafti sent an email to
the email address █████████████.  In this
email, Tafti forwarded to Ahmad Azizi ("Azizi")
correspondence from a New York attorney for Assa Corp.
Upon information and belief, Azizi is an official at
Bank Melli in London, England.

      b.   On or about June 19, 2003, Tafti received an email
from the email address █████████████████.  In
this message, the sender wrote, in part, "I have had
the letter of Intent and the Contract for Sale
reviewed."  The sender of the email identified himself
as "A. Azizi."  Upon information and belief, Azizi sent
this message using the email account of Maria
Chowdhury, a Bank Melli employee in London.  Upon
information and belief, this email was referring to a
proposed deal, which ultimately collapsed, to sell Assa
Corp.'s interest in the Fifth Avenue Company.

      c.   On or about November 20, 2004, Tafti received an
email from the email address █████████████████.  In
this message, the sender wrote, "You are kindly
requested [to] . . . send the monthly expenses of Assa
Corp from April 2004 onward, to please make some
arrangement so that the detailed expenses of this Co.
are available for the use of the auditors."  Upon
information and belief, this email was sent by Ali
Safari, an employee in Bank Melli's Overseas Network
Supervisory Department, known as "ONSD," which is
located in Tehran, Iran.

      d.   On or about December 3, 2004, Tafti received an
email from the email address █████████████████
containing a list of Assa Corp. expenses.

      e.   On or about February 5, 2005, Tafti sent an email
to the email address █████████████████ and
wrote, "Dear brother Mr. Ghadimipour: As you are aware
approximately two months ago two sets of minutes

-12-

regarding the ending of the court file and extension of
the loan were sent for the signature of the
shareholders, Mrs. Aghamiri and Mr. Shakeri.
Regretfully, it has not been received yet.  Because the
matter is important, and the lawyer and the secretary
of the Company . . . are anxious, please issue proper
order because any delay will cause doubt and
sensitivity here and God forbid will cause irrevocable
loss. Once more asking an urgent action."  Upon
information and belief, "Mr. Ghadimipour" is Mohsen
Ghadimipour, the current head of ONSD.

f.    On or about March 5, 2005, Tafti sent an email to
████████████████.  In this email, Tafti wrote, "To
shareholders of Assa Co.: With reference to the message
of 2/28/05, this is to inform you that the financial
statements of both Assa Ltd. Co. and Assa Corp. New
York, were sent to you in the last week via London."
Upon information and belief, this email address belongs
to ONSD.

g.    On or about March 16, 2005, Tafti sent another
email to ████████████████.  In this email, Tafti
wrote, "To the shareholders of Assa Corp.:  With
reference to today's email, this is to inform you that
the financial statements of Assa Corp up to 3/31/04
were sent to your office addressed to Mr. Ghadimipour."

h.    On June 19, 2005, after Citibank in New York, New
York, had refused to wire $1.3 million from an Assa
Corp. bank account to Assa Ltd., Tafti sent an email
from the email address ████████████████ to the
"shareholders of Assa Co. Ltd."  In this email,  Tafti
wrote, "With reference to the email #M-KH of 6/16/2005
this is to inform you that the Company [Assa Corp.] has
made an extended action to remit the monies to banks
outside of the U.S.  In this regard, many meetings were
held with Citibank.  Tomorrow I have a meeting with the
bank because they invited all of the directors of Assa
New York to participate.  The only problem is the
absence of Mr. Shakeri.  I thought I might tell them
that Mr. Shakeri is on a trip or resigned from
directorship, and that [a New York attorney for Assa
Corp.] and I are the directors of Assa in New York now;
however, I will consult with [the New York attorney]
because he will participate in the meeting as the
director and secretary of the Co.  Hoping God will
help.  As you are aware, Citibank has not transferred
the sum of $1,360,800 to the account of Assa Ltd. to
London auditors.  I spoke many times with the bank and
presented evidence such as payment of the tax, and hope
with activity can solve the problem.  I will make a
report to you of the result of tomorrow's session.

-13-

Also I believe after solving the above issue, that we should send smaller amounts in the form of monthly, maximum in 3 months payments, to London, so that the amounts would not appear big.  Meanwhile I will try to open an account in another bank, unfortunately owing to special problems here, because the bank wants to know all the directors.  However, the interests of the shareholders will be preserved in the best way.  Thanks. Assa Corp.  Tafti."  By this email, Tafti acknowledged the apparently fictional nature of Shakeri's ownership of Assa Corp. through Assa Co. Ltd., and that Shakeri was apparently unwilling or unable to travel to the United States to attend to his substantial financial concerns here.

i.    On or about July 2, 2005, Tafti sent an email to ████████████████████████.  In this email, Tafti wrote, "Mr. Ghadimipour, the director of the branches of Bank Melli, outside of Iran.  As you are aware, the issue of the place of residence of shareholders and the director of the Company in the USA has a special importance.  At present, shareholders are forbidden from having residences in Iran, and as per the view of the legal experts, the American government may freeze the capital of the shareholders.  At the present time, owing to prevention of our Iranian companies, the issues are more sensitive.  Fortunately, Assa Corp. has not had a problem, except for the weakness of residence location of the shareholder which should be removed.  Therefore, please make some arrangement that the residence location of the shareholders of Assa, Mr. Davood Shakeri and Mrs. Aghamiri be changed to another country, and considering my knowledge of the United Arab Emirates, one of the Emirates is proposed.  Please order appropriately."

j.  On or about July 6, 2005, Tafti sent another email to the email address ██████████████.  In this email, Tafti wrote, "To Mr. Ghadimipour, the director of the branches outside of the country.  With reference to the email and phone conversations of 4/7/2005, this is to inform you the result of my discussions and investigations with the consultants and the lawyers in America and London: changing the shareholder of Assa Ltd. is possible, but the shareholder should reside in a tax free country.  Otherwise, the country of residence will collect a tax from the income of the shareholder."  By this communication proposing to "chang[e]" the shareholders, Tafti acknowledged the fictional nature of ownership of Assa Co. Ltd. by Shakeri and Aghamiri.

k.  On August 9, 2005, Tafti received an email from

the email address ███████████   In this email,
the sender wrote, "With reference to the email of
7/7/2005, regarding the location of residence of the
shareholders, this is to inform you that, as per the
orders of the Bank Manager, until the appointment of
the qualified individuals, act as before."

l.    On or about February 26, 2006, Tafti sent an email
to the email address ███████████. Tafti wrote,
in part, "To the Shareholders of Assa Co.:  With
reference to the today's e-mail this is to inform you
that the financial statements of Assa Corp. of New York
today were sent to you via London.  Please note that
the reason of the delay was the preparing the financial
statements of Sherkate Tazamoni (General Partnership
Co.) of Alavi Foundation Co. Ltd., which is to be
regretted."

m.    On or about May 17, 2006, Tafti sent an email to
the email address ███████████.  Therein, he
wrote: "Following the email of 4/29/06, this is to
inform you that the financial statements of Assa Co.
Ltd. up to 3/31/05 after auditing . . . have been
dispatched to you via London."

<u>The Defendant Accounts</u>

32.    Defendant Accounts-1, -2, -3, and -4
(collectively, the "Defendant Accounts") are held in the name of
Assa Corp.  Tafti is the only signatory on the Accounts.

33.    Between January 7, 2000 and December 5, 2007,
approximately $17,083,000 from the Fifth Avenue Company was
deposited into Account-1.  The bank records for Account-1 also
show the following financial activities, among others:

a.    On or about December 3, 2007, Tafti wrote a check
for $10,500, from Account-1, to pay the rent for the
house in which he lived.

b.    On or about December 5, 2007, Account-1 received a
wire transfer of $200,000 from the Fifth Avenue
Company.

c.    On or about April 2, 2008, Tafti wrote a check for
$40,000 to New York State Corporation Tax from
Account-1.

-15-

d.   On or about April 2, 2008, Tafti wrote a check for
$1,240 to New York State Corporation Tax from
Account-1.

e.   On or about April 2, 2008, Tafti wrote a check for
$202 to New York State Corporation Tax from Account-1.

f.   On or about April 3, 2008, Tafti wrote a check for
$37,500 to the New York City Department of Finance from
Account-1.

34.   Approximately $1.09 million was transferred from
Account-1 to Account-3 in November 2006.  In addition, Tafti
transferred substantial amounts from Account-1 to Assa Co. Ltd.

35.   In or about October 2008, agents of the Federal
Bureau of Investigation ("FBI") executed federal seizure warrants
for the funds in the Defendant Accounts.  Approximately $1.9
million was seized from Citibank, and approximately $1.2 was
seized from JPMorgan.

### IV.  CLAIMS FOR FORFEITURE

### STATUTORY BASES FOR FORFEITURE

36.   The statutory provisions pursuant to which the
Defendant Properties are subject to seizure and forfeiture are as
follows.

### Proceeds Traceable to Violations of IEEPA

37.   Title 18, United States Code, Section 981(a)(1)(C)
subjects to forfeiture "[a]ny property, real or personal, which
constitutes or is derived from proceeds traceable to a violation
of . . . any offense constituting 'specified unlawful activity'
(as defined in section 1956(c)(7) of this title), or a conspiracy
to commit such offense."

38.   Under Section 1956(c)(7), the term "specified

unlawful activity" includes, among other things, violations of "section 206 (relating to penalties) of the International Emergency Economic Powers Act [50 U.S.C. § 1705]."   Section 1705 provides, in part, that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this title."   50 U.S.C. § 1705(a).

39.   Because the Defendant Properties constitute or were derived from proceeds traceable to violations of regulations promulgated under IEEPA (namely, 31 C.F.R. §§ 560.203, 560.204, and 560.206), the Defendant Properties are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

### Property Involved in Laundering Proceeds of IEEPA Violations

40.   Title 18, United States Code, Section 981(a)(1)(A) subjects to forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of . . . section 1956 or 1957 of this title [relating to money laundering], or any property traceable to such property."

41.   Title 18, United States Code, Section 1956(a) provides criminal penalties for:

> (a)(1) [w]hoever knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct a financial transaction which in fact involves the proceeds of specified unlawful activity –
>
> (A) (i) with the intent to promote the carrying on of specified unlawful activity; or
>
> . . .

-17-

(B) knowing that the transaction is designed
in whole or in part --

(i) to conceal or disguise the nature, the location,
the source of ownership, or the control of the proceeds
of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under
State or Federal law . . . .

(2) Whoever transports, transmits, or transfers, or
attempts to transport, transmit, or transfer a monetary
instrument or funds from a place in the United States
to or through a place outside the United States or to a
place in the United States from or through a place
outside the United States--

(A) with the intent to promote the carrying on of
specified unlawful activity; or

(B) knowing that the monetary instrument or funds
involved in the transportation represent the proceeds
of some form of unlawful activity and knowing that such
transportation, transmission, or transfer is designed
in whole or in part--

(i) to conceal or disguise the nature, the location,
the source, the ownership, or the control of the
proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under
State or Federal law.

42.   In addition, Section 1956(h) provides, in part,

that "[a]ny person who conspires to commit any offense defined in

this section or section 1957 shall be subject to the same

penalties as those prescribed for the offense the commission of

which was the object of the conspiracy."

43.   18 U.S.C. § 1957 provides in relevant part that:

Whoever . . . knowingly engages or attempts
to engage in a monetary transaction in
criminally derived property of a value
greater than $10,000 and is derived from
specified unlawful activity, shall be
punished as provided in subsection (b).

44.   "Monetary transactions" is defined in 18 U.S.C.

-18-

§ 1957(f)(1) as the "deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce of funds . . . by, through, or to a financial institution . . . including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title . . . ."

45.   "Criminally derived property" is defined in 18 U.S.C. § 1957(f)(2) as "any property constituting, or derived from, proceeds obtained from a criminal offense."

46.   "Specified unlawful activity" is defined in 18 U.S.C. § 1957(f)(3) as having the same meaning as that term has in 18 U.S.C. § 1956.  As noted above, the term "specified unlawful activity," as defined in Section 1956, includes violations of IEEPA.

47.   In addition, the term "financial transaction" is defined in 18 U.S.C. § 1956(c)(4), and includes "a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments . . . ."

48.   Because the Defendant Properties constitute properties involved in transactions or attempted transactions in violation of Sections 1956 and 1957, they are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant Properties and that all persons having an interest in the Defendant Properties be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant Properties to the United States of America for disposition according to law and that this Court grant plaintiff such further relief as this Court may deem just and proper together with the costs and disbursements in this action.

Dated:     New York, New York
           December 17, 2008

                              LEV L. DASSIN
                              Acting United States Attorney for
                              Plaintiff United States of America

        By:    _____
                              SHARON COHEN LEVIN
                              ANNA E. ARREOLA
                              HARRY A. CHERNOFF
                              ERIC SNYDER
                              Assistant United States Attorneys
                              One St. Andrew's Plaza
                              New York, New York 10007
                              (212) 637-1060/2218/2481/2534

<u>VERIFICATION</u>

STATE OF NEW YORK                )
COUNTY OF NEW YORK               :
SOUTHERN DISTRICT OF NEW YORK )

     GEORGE J. ENNIS, JR. being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"); that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his knowledge, information and belief.

     The sources of deponent's information and the grounds of his belief are his personal involvement in the investigation, and conversations with and documents prepared by law enforcement officers and others.

GEORGE J. ENNIS, JR.
Special Agent
Federal Bureau of Investigation

Sworn to before me this
17th day of December 2008

Notary Public

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires _May 8, 2010_

EXHIBIT B

PRESS ROOM
U.S. DEPARTMENT OF THE TREASURY

December 17, 2008
HP-1330

**Treasury Designates Bank Melli Front Company in New York City**

Washington, DC--The U.S. Department of the Treasury today designated ASSA CORP., a front company created and controlled by Iran's Bank Melli and domiciled in New York, and its parent organization, ASSA CO. LTD, located in the Channel Islands.

"This scheme to use a front company set up by Bank Melli -- a known proliferator -- to funnel money from the United States to Iran is yet another example of Iran's duplicity," said Under Secretary for Terrorism and Financial Intelligence Stuart Levey.  "The dangerous mix of proliferation and deception has led the United States, the European Union and Australia to designate Bank Melli, and the United Nations to issue a call for vigilance with respect to all Iranian banks."

These entities were designated under Executive Order 13382 for being controlled by, and for acting for or on behalf of, Iran's Bank Melli, and for having provided financial support for, or services in support of, Bank Melli.  Bank Melli was previously designated under E.O. 13382 on October 25, 2007.  E.O. 13382 is aimed at freezing the assets of proliferators of weapons of mass destruction (WMD) and their supporters.

Bank Melli provides financial services, including opening letters of credit and maintaining accounts, for Iranian front companies and entities engaged in proliferation activities. Further, Bank Melli has facilitated the purchase of sensitive materials utilized by Iran's nuclear and missile industries, and has handled transactions for other designated Iranian entities, including Bank Sepah, Defense Industries Organization, and the Shahid Hammat Industrial Group.

Bank Melli has been designated as a proliferator by the United States and the European Union for its role in Iran's nuclear and ballistic missile programs.  United Nations Security Council Resolution 1803 calls on all member states to exercise vigilance with regard to activities between financial institutions in their countries and all Iranian banks, particularly Bank Melli.

Further, Bank Melli provides banking services to Iran's military vanguard, the Iranian Revolutionary Guards Corps (IRGC) and the Qods Force, which is a branch of the IRGC that has been designated under Executive Order 13224 for providing support to terrorist groups, including the Taliban, Hizballah, Hamas, Palestinian Islamic Jihad, and the Popular Front for the Liberation of Palestine – General Command.

Bank Melli created ASSA CORP. as a vehicle to hold Bank Melli's interest in a building located at 650 Fifth Avenue, New York, New York, whose construction had been financed, in part, by a Bank Melli loan.  ASSA CORP. co-owns the building through a partnership formed with the Alavi Foundation of New York, called 650 Fifth Avenue Company.

ASSA CORP. has repeatedly transferred rental income generated from the 650 Fifth Avenue partnership back to Bank Melli through ASSA CO. LTD.  ASSA CORP. also has regularly followed Bank Melli's instructions with regard to ASSA CORP.'s affairs and its management of the investment, and has regularly reported back to Bank Melli on its financial situation, including frequently responding to Bank Melli requests for audits and information regarding company expenses.

This designation does not interfere with the business and other activities of the tenants of 650 Fifth Avenue, and U.S. persons are not prohibited from dealing with business establishments or other tenants of the building.

The preparation and execution of this designation required careful coordination with various components of the U.S.  Department of Justice, the Federal Bureau of Investigation, the Internal Revenue Service, the New York Police Department, and the New York County District Attorney's Office.

-30-

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                    :

       -v.-                                 :

ALL RIGHT, TITLE, AND INTEREST OF ASSA       :
CORPORATION, ASSA COMPANY LIMITED, AND
BANK MELLI IRAN IN 650 FIFTH AVENUE          :
COMPANY, INCLUDING BUT NOT LIMITED TO THE
REAL PROPERTY AND APPURTENANCES LOCATED AT   :
650 FIFTH AVENUE, NEW YORK, NEW YORK, WITH
ALL IMPROVEMENTS AND ATTACHMENTS THEREON,    :

ALL FUNDS FORMERLY ON DEPOSIT AT CITIBANK,   :
N.A., NEW YORK, NEW YORK, IN ACCOUNT
NUMBER 78429712, IN THE NAME OF ASSA         :
CORPORATION, AND ALL FUNDS TRACEABLE
THERETO,                                     :

ALL FUNDS FORMERLY ON DEPOSIT AT CITIBANK,   :
N.A., NEW YORK, NEW YORK, IN ACCOUNT
NUMBER 8881654552, IN THE NAME OF ASSA       :
CORPORATION, AND ALL FUNDS TRACEABLE
THERETO,                                     :

ALL FUNDS FORMERLY ON DEPOSIT AT JPMORGAN    :
CHASE BANK, N.A., BATON ROUGE, LOUISIANA,
IN ACCOUNT NUMBER 2724409590, IN THE NAME    :
OF ASSA CORPORATION, AND ALL FUNDS
TRACEABLE THERETO, AND                       :

ALL FUNDS FORMERLY ON DEPOSIT AT JPMORGAN    :
CHASE BANK, N.A., BATON ROUGE, LOUISIANA,
IN ACCOUNT NUMBER 725700280, IN THE NAME     :
OF ASSA CORPORATION, AND ALL FUNDS
TRACEABLE THERETO,                           :

      Defendants *in rem*.                    :

- - - - - - - - - - - - - - - - - - - - - x

POST-COMPLAINT
PROTECTIVE ORDER
PURSUANT TO
18 U.S.C. § 983(j)(1)


08 Civ. 10934 (RJH)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/18/08

      WHEREAS, on December 17, 2008, the United States commenced

this action, upon the filing of a verified complaint (the

"Complaint"), seeking forfeiture of the above-captioned properties,

which include but are not limited to:

          All right, title, and interest of Assa Corporation, Assa
          Company Limited, and Bank Melli Iran in 650 Fifth Avenue
          Company, including but not limited to the real property and

appurtenances located at 650 Fifth Avenue, New York, New York, with all improvements and attachments thereon (the "Defendant Property");

WHEREAS, the Complaint alleges, in part, that 650 Fifth Avenue Company (the "Fifth Avenue Company") is a partnership between the Alavi Foundation of New York (the "Alavi Foundation") and Assa Corporation; that the Alavi Foundation and Assa Corporation own 60% and 40%, respectively, of the Fifth Avenue Company; and that Assa Corporation and its parent, Assa Company Ltd., are straw companies owned and controlled by Bank Melli Iran ("Bank Melli");

WHEREAS, the Complaint further alleges that the Fifth Avenue Company owns the real property and appurtenances located at 650 Fifth Avenue, New York, New York (the "Building");

WHEREAS, the Complaint further alleges that Assa Corporation has been exporting and/or supplying services to Bank Melli in violation of Executive orders issued pursuant to regulations promulgated under the International Emergency Economic Powers Act ("IEEPA") and regulations issued by the United States Department of Treasury, Office of Foreign Assets Control ("OFAC"), and that the Defendant Property is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in money laundering and attempted money laundering transactions, in violation of 18 U.S.C. §§ 1956 and 1957;

WHEREAS, on December 17, 2008, OFAC designated Assa Corporation "for being an entity controlled by, and for acting for or on behalf of, Bank Melli, and for having provided financial support for, or services in support of, Bank Melli";

WHEREAS, the Building is currently being managed by Jones,

-2-

Lang, LaSalle (the "Management Company"); and

WHEREAS, the United States has applied for a protective order to preserve the availability of the Defendant Property for civil forfeiture;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, PURSUANT TO 18 U.S.C. § 983(j)(1)(A), THAT:

<u>Prohibited Actions</u>

1.    All persons and entities having actual knowledge of this Protective Order shall not, directly or indirectly, transfer, sell, assign, pledge, hypothecate, encumber, or dispose of in any manner; cause to be transferred, sold, assigned, pledged, hypothecated, encumbered, disposed of in any manner; or take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of, the Defendant Property.

2.    All persons and entities having actual knowledge of this Protective Order shall not, directly or indirectly, destroy any documents relating in any manner or part to the allegations in the Complaint, including but not limited to the books and records of the Fifth Avenue Company, the Pahlavi Foundation, the Mostazafan Foundation, the Alavi Foundation, Assa Corporation, Assa Company Ltd., and/or Bank Melli.

<u>Maintaining the Property</u>

3.    The Management Company and the Fifth Avenue Company shall maintain all books and records in their possession, custody and/or control, that relate in any manner or part to the Fifth Avenue Company, the Pahlavi Foundation, the Mostazafan Foundation,

-3-

the Alavi Foundation, Assa Corporation, Assa Company Ltd., Bank Melli, and/or the allegations in the Complaint.

    4.   The Fifth Avenue Company shall provide to the United States, or its designee, within twenty (20) days of this Protective Order, the following:

> (i) a complete list of the Fifth Avenue Company's assets, including but not limited to any real properties, personal properties, bank accounts, and/or investment accounts; and

> (ii) a report of monthly income and expenses from December 2007 through the Present, including an accounting of disbursements to Assa Corporation and the Alavi Foundation.

    5.   The Management Company shall provide to the United States, or its designee, within twenty (20) days of this Protective Order, the following:

> (i) a copy of the Management Company's agreement(s) with the Fifth Avenue Company, the Alavi Foundation, and/or Assa Corporation;

> (ii) a complete list of the Building's tenants and rent rolls; and

> (iii) a report of monthly income and expenses for the Building from December 2007 through the Present.

    6.   The Fifth Avenue Company and the Management Company shall make available for inspection to the United States, or its designee, the books and records of the Fifth Avenue Company.

    7.   The Management Company shall continue to comply with

-4-

the terms of its agreement(s) with the Fifth Avenue Company, unless such terms are prohibited by this Protective Order or otherwise prohibited by law (including any prohibitions arising from OFAC's designation of Assa Corporation).

8.   The Management Company and/or Fifth Avenue Company shall, within twenty (20) days of the issuance of this Protective Order, provide an accounting of all income and/or disbursements due and owing to Assa Corporation from the Fifth Avenue Company.

9.   The Management Company and/or Fifth Avenue Company shall transfer all income and/or other disbursements due and owing to Assa Corporation from the Fifth Avenue Company to a bank account (the "Designated Account") to be provided by the United States within ten (10) days of this Protective Order, in accordance with any licenses issued by OFAC.

10.   The Management Company shall provide to the United States, or its designee, on a monthly basis, a report of the income and expenses for the Building.

11.   The Fifth Avenue Company shall provide to the United States, or its designee, on a monthly basis, a report of the income and expenses for the Fifth Avenue Company.

12.   Nothing in this Protective Order shall be construed as prohibiting any debtors, creditors, or tenants from complying with the terms of their agreement(s) with the Fifth Avenue Company and/or the Management Company.

13.   Nothing in this Protective Order shall be construed as affecting in any way the rights of any part under Section 201 of the Terrorism Risk Insurance Act of 2002.

SO ORDERED this
17 day of December 2008:

_____
HONORABLE RICHARD J. HOLWELL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF NEW YORK